122675-10/2923808

## UNITED STATES DISTRICT COURT MIDDLE DISTRICT OF FLORIDA JACKSONVILLE DIVISION

HORACE B. CUMMINGS,                    CASE NO. 3:24-cv-796-MMH-PDB

      Plaintiff,

v.

KASEY M. PAYNTER, JAMES R.
RYAN, M.D., THOMAS
WINTERS, M.D., D.P. TURNER,
M.D., and CINDY G. NELSON,
L.P.N.,

      Defendants.

_____/


## DEFENDANTS', JAMES R. RYAN, M.D. AND THOMAS WINTERS, M.D., MOTION TO DISMISS COUNTS III AND IV OF PLAINTIFF'S AMENDED COMPLAINT

COMES NOW, Defendants, James R. Ryan, M.D. and Thomas Winters, M.D., by and through the undersigned counsel, and pursuant to Federal Rule of Civil Procedure 12(b)(6), and Chapter 766 of the Florida Statutes, hereby file this Motion to Dismiss Counts III and IV of Plaintiff's Amended Complaint. Defendants submit that this case must be dismissed because Plaintiff has alleged medical malpractice and failed to comply with the mandatory pre-suit process as set forth in Chapter 766 of the Florida Statutes. Defendants further submit that

CASE NO. 3:24-cv-796-MMH-PDB

Plaintiff fails to state an Eighth Amendment deliberate indifference claim. As grounds in support thereof, Defendants respectfully submit as follows:

**<u>PROCEDURAL HISTORY</u>**

1.      Plaintiff pro se, an incarcerated person in the custody of the Florida Department of Corrections, initially filed his Complaint on May 2, 2024, in the U.S.D.C. for the Northern District of Florida. <u>ECF No. 1</u>.

2.      On May 13, 2024, the Order of Magistrate Judge Martin A. Fitzpatrick directed Plaintiff to file an Amended Complaint. <u>ECF No. 6</u>.

3.      Plaintiff filed the instant Amended Complaint on June 17, 2024. <u>ECF No. 15</u>.

4.      Thereafter, Magistrate Fitzpatrick issued a recommendation on July 1, 2024, that this matter be transferred to the U.S.D.C. for the Middle District of Florida. The Court noted that all relevant events occurred at the Department of Corrections' Reception and Medical Center (RMC) located in Lake Butler, FL, within the jurisdiction of the Middle District of Florida. <u>ECF No. 17</u>.

5.      The matter was transferred on August 1, 2024.

6.      Service of process was effectuated of Defendants on May 23, 2025. <u>ECF No. 44 and 46</u>.

7.    Plaintiff's Amended Complaint alleges violation of his civil rights pursuant to 42 U.S.C. Section 1983.

8.    Specifically, Count III of Plaintiff's Amended Complaint alleges that Defendant James R. Ryan, M.D., violated Plaintiff's 8th Amendment rights by "deliberate indifference" to his medical needs. Plaintiff further alleges that Dr. Ryan "knew of the serious risks to my knee, but refused proper treatment." ECF No. 15, p. 14.

9.    Similarly, Count IV of Plaintiff's Amended Complaint alleges that Defendant Thomas Winters, M.D., violated Plaintiff's 8th Amendment rights by "deliberate indifference" to his medical needs regarding treatment of Plaintiff's knee. Id.

10.    While Plaintiff's allegations purport to be grounded on violations of his constitutionally protected civil rights, the facts pled are actually based on and related to the medical care and treatment Plaintiff received from these Defendants. As such, Plaintiff's claims should be deemed claims for medical malpractice pursuant to Chapter 766 of the Florida Statutes.

11.    Moreover, Plaintiff is subject to the mandatory pre-suit requirements set forth within Chapter 766 of the Florida Statutes. As he has not complied with same, Counts III and IV warrant dismissal.

CASE NO. 3:24-cv-796-MMH-PDB

**FACTS AS PLED BY THE PLAINTIFF**

12.    At Paragraphs 7-11 of his Amended Complaint, Plaintiff states following an MRI on February 7, 2023, he was diagnosed with a tear to the right patellar tendon of the knee. He was examined by both Dr. Ryan and Dr. Winters, who both agreed that he required surgery. On April 28, 2023, Plaintiff states that both physicians performed surgery to repair the right patellar tendon.

13.    Following the surgery, on May 19, 2023, Plaintiff was seen by both physicians for follow-up treatment. Plaintiff alleges that his surgical wound was visibly infected. Specifically, he states at Paragraph 16 of the Amended Complaint that the wound was "hot, swollen, leaking puss," and causing him severe pain. Despite these symptoms, he states that the Defendants "refused to give any new treatment," and solely continued the same antibiotic and daily wound care regimen. Id.

14.    At Paragraph 20 of the Amended Complaint, Plaintiff states that on June 16, 2023, Defendants re-examined him and recommended a second surgical procedure. Further, he states that Defendants conducted an "irrigation and debridement of the right knee to clean out the infection." Id.

15.     Plaintiff also states that the Defendants were aware that co-Defendant Paynter failed to provide daily wound care as prescribed by these Defendants. Id. at ¶21.

16.     On July 14, 2023, Plaintiff states that Defendant performed the second surgery to his right knee "in the same moldy mobile hospital unit" in which the first procedure was performed. Id. at ¶24.

17.     Following the second surgery, Plaintiff states that his surgical wound was bleeding to the point that he had to "borrow adult diapers from other inmates" to wrap the knee. He was admitted to the urgent care unit the day after the surgery, and states that the doctor there opined that he "should not have been allowed to leave the surgery room in this condition." Id. at ¶31.

18.     Plaintiff states that he required IV antibiotics for 20 days. Moreover, when he was re-examined by Defendants on July 28, 2023, he states that they "did not provide any treatment at that time, but scheduled a follow up in 3 weeks." Id. at ¶34.

19.     Plaintiff states that Defendants failed to schedule any follow up appointment. Id. at ¶36.

20.     Thereafter, on November 10, 2023, Plaintiff saw Dr. Winters, who ordered an X-ray and an MRI of the knee. Plaintiff alleges that during the MRI he

overheard the technicians discussing how they could see an infection in the knee and inquired why he was not on antibiotics.  Id. at ¶44-45.

21.     Plaintiff states that he did not see Defendants for 29 days after the MRI. Plaintiff saw Dr. Ryan on January 12, 2024. Plaintiff states that Dr. Ryan refused to acknowledge the infection in his knee, but stated "that there is a 2% chance that the surgeries he and Dr. Thomas Winters do 'go wrong,' and that [Plaintiff] was in that 2%." Id. at ¶47.

22.     Plaintiff states that Dr. Ryan then recommended a third surgery for a "right knee arthroscopy with shaving partial medial and lateral meniscectomy vs repair." Plaintiff refused to undergo the procedure "while the infection remains." Id. at ¶48.

23.     After the last visit with Dr. Ryan, Plaintiff developed a cyst on the knee, which required draining. He was prescribed another course of antibiotics. Ultimately, Plaintiff claims that his knee remains infected, causing him "serious pain," and rendering him unable to walk without assistance. Id. at ¶54.

## ARGUMENT AND MEMORANDUM OF LAW

## I.      PLAINTIFF FAILS TO PLEAD FACTS ESTABLISHING DELIBERATE INDIFFERENCE TO HIS MEDICAL NEEDS.

CASE NO. 3:24-cv-796-MMH-PDB

24.    "To establish liability for deliberate indifference to a serious medical need, a plaintiff must prove that the defendant 1) had subjective knowledge of a risk of serious harm, 2) disregard for that risk, and 3) display conduct beyond gross negligence." R.W. v. Armor Correctional Health Services, Inc., 830 F.Supp.2d 1295, 1303 (M.D. Fla., November 21, 2011).

25.    Further, the Plaintiff must "show that he had a 'serious medical need,' that Defendants exhibited 'deliberate indifference to the need,' and that there was 'causation between [Defendants'] indifference and [Plaintiff's] injury'." Pennington v.Bhadja, 2024 WL 1239475 *7, Not reported in Fed. Supp (S.D. Fla. March 22, 2024).  Further, "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain'." Johnson v. McNeil, 278 Fed.Appx. 866, 869 (11th Cir. 2008), citing Estelle v. Gamble, 429 U.S. 97, 104 (1976).

26.    Here, while Plaintiff alleges post-surgical medical need regarding an allegedly infected wound, he does not plead facts establishing deliberate indifference to said need or gross negligence on the part of Dr. Winters and Dr. Ryan. To the contrary, he states that after the first surgery, the doctors prescribed antibiotics and put in orders for daily wound care. See Complaint ECF No. 15, ¶14-16. Further, Plaintiff states that approximately two months after his first surgery,

Dr. Winters and Dr. Ryan continued to order daily wound care and recommended a second surgery, as well as an irrigation and debridement "to clean out the infection in the right knee." Id. at ¶20.

27.     Plaintiff states that the doctors failed to provide treatment at a July 28, 2023 follow-up exam, and then contradictorily states that he was already receiving IV antibiotic treatment from July 15, 2023 – August 8, 2023.  Id. at ¶33-34. Next, Plaintiff was treated by Dr. Winters in November 2023, when Dr. Winters ordered x-rays and an MRI. Id. at ¶43. He then saw Dr. Ryan in January 2024, wherein Dr. Ryan recommended a third surgery.

28.     Thus, while Plaintiff claims that Dr. Winters and Dr. Ryan failed to treat an infection in his knee, he states that they prescribed antibiotics, put in multiple orders for daily wound care, recommended and performed a second surgery, and performed an irrigation and debridement. Finally, they recommended and offered to perform a third surgery. None of the facts as pled by Plaintiff establish a deliberate indifference to Plaintiff's injury. To the contrary, Defendants' continuously provided a plan of care and course of treatment for Plaintiff's knee. Moreover, Plaintiff does not state any facts indicating a delay in treatment.

29.     Further, Plaintiff does not state any facts indicating an unnecessary or wanton infliction of pain. Indeed, "the inadvertent or negligent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain." Farrow v. West, F.3d 1235, 1243 (11th Cir. 2003). Plaintiff fails to establish any grossly negligent conduct on the part of Dr. Winters and Dr. Ryan. Moreover, Plaintiff's claims are grounded on his interpretation of what constitutes a reasonable standard of care for treatment of an infected knee, as his only claims are that Dr. Ryan and Dr. Winters seemingly disregarded his knee pain and infection. However, his own pleading acknowledges that they ordered antibiotics, daily wound care treatment, and performed multiple surgeries, irrigation and debridement. Thus, Plaintiff's claims are grounded on medical malpractice, and not deliberate indifference.

## II.     PLAINTIFF'S CLAIMS ARE ACTUALLY BASED ON ALLEGED MEDICAL MALPRACTICE

30.     There are two considerations under which Florida courts evaluate cases to determine if they constitute a medical malpractice claim: (1) the court considers whether the action arose out of a medical diagnosis, treatment, or care, and (2) the court considers whether said diagnosis, treatment or care was rendered by a health care provider. See Silva v. Southwest Florida Blood Bank, Inc., 601

So.2d 1184, 1186 (Fla. 1992). Courts also look to whether the plaintiff will rely on the medical negligence standard of care, as set forth in § 766.102(1) in order to succeed in the case. Integrated Health Care Servs., Inc. v. Lang–Redway, 840 So.2d 974, 980 (Fla. 2002).

31.    According to Florida Statute §766.106(1)(a), a negligence claim constitutes medical malpractice when the claim arises out of the "rendering of, or the failure to render, medical care or services."

32.    The Florida Supreme Court has held that "diagnosis, treatment and care" should be given their plain meaning, and that "in ordinary, common parlance, the average person would understand diagnosis, treatment, or care to mean ascertaining a patient's medical condition through examination and testing, prescribing and administering a course of action to effect a cure, and meeting the patient's daily needs during the illness." Nat'l Deaf Acad., LLC v. Townes, 242 So.3d 303, 309 (Fla. 2018).

33.    When alleging medical negligence, as here, Plaintiff has the burden of proving the actions of the health care provider represented a breach of the prevailing professional standard of care for that health care provider. Fla. Stat. §766.102(1) Fla. Stat.

34.    When alleging medical negligence, as here, the health care provider-patient relationship gives rise to the duty of care, <u>Torres v. Sarasota County Public Hosp. Bd.</u>, 961 So.2d 340 (Fla. 2d DCA 2007), whereas in a general negligence action the duty of care is owed to those within the foreseeable zone of risk created by the Defendants. <u>McCain v. Florida Power Corp.</u>, 593 So.2d 500 (Fla. 1992).

35.    Plaintiff alleges Tom Winters, M.D. and James R. Ryan, M.D. ignored an ongoing infection in his surgical wound site and delayed treatment for same, and as a result, caused pain and suffering in his right knee, and hampered his ability to walk. Thus, Plaintiff has alleged medical malpractice, and his allegations can only be proven through evidence that the alleged action and/or inaction of Defendants fell below the prevailing standard of care in the community, which resulted in injury to Plaintiff.

## III.   PLAINTIFF ALLEGES MEDICAL MALPRACTICE, BUT FAILED TO COMPLY WITH THE MANDATORY PRE-SUIT REQUIREMENTS SET FORTH IN §766.106(2) FLORIDA STATUTES.

36.    Pursuant to established Florida law, where a Defendant is being sued for alleged medical negligence, that Defendant is entitled to the pre-suit notice and investigation requirements set forth in Fla. Stat. §766.106(2). <u>NME Properties, Inc.</u>

CASE NO. 3:24-cv-796-MMH-PDB

v. McCullough, 590 So.2d 439 (Fla. 2d DCA 1991); Weinstock v. Groth, 629 So.2d 835, 837 (Fla. 1993).

37.    Further, as part of the pre-suit investigation, Plaintiff must notify the "prospective Defendants" of the intent to initiate litigation prior to filing a claim for medical malpractice.  Fla. Stat.  §766.106(2)-(3)(a).

38.    Moreover, Fla. Stat. §766.106(2)(c), requires: "[n]otice to each prospective Defendant must include, if available, a list of all known health care providers seen by the claimant for the injuries complained of subsequent to the alleged act of negligence, all known health care providers during the 2-year period before the alleged act of negligence who treated or evaluated the claimant, copies of all of the medical records relied upon by the expert in signing the affidavit, and the executed authorization form provided in s. 766.1065."

39.    "Florida law mandates the dismissal of claims filed before these prerequisites [are] met." R.W. v. Armor Correctional Health Services, Inc., 830 F.Supp.2d 1295, 1303 (M.D. Fla., November 21, 2011).

40.    "Moreover, Florida's pre-suit requirements 'apply to cases filed in federal court'." Wright v. Gupta, 2020 WL 7251200 *2 (M.D. Fla., October 26, 2020) (not reported in F.Supp.), quoting Bullock v. Kindred Hospitals East, LLC, 2006

WL 2620138 *2 (M.D. Fla., Sept. 13, 2006) (not reported in F.Supp.2d), citing McMahan v. Toto, 256 F.3d 1120 (11th Cir. 2001).

41.    In medical malpractice actions, plaintiffs must prove the Defendant health care provider breached the prevailing professional standard of care, as testified to by a qualified medical expert, in order to prove their claim. Ramsay v. S. Lake Hosp., 357 So.3d 253, 258 (Fla. 5th DCA 2023); Rockledge HMA, LLC v. Lawley, 310 So.3d 112, 115 (Fla. 5th DCA 2020) (quoting Nat'l Deaf Acad., LLC v. Townes, 242 So.3d 303, 308 (Fla. 2018)).

42.    In the present matter, Plaintiff's allegations classify Defendants as healthcare providers owing a duty of care to a patient, and as such, must be evaluated under Chapter 766 of the Florida Statutes, which governs medical malpractice.

43.    Plaintiff has failed to comply with the mandatory pre-suit investigation as required by Fla. Stat. §766.106(2)-(3)(a), prior to commencing this action. Specifically, prior to filing the subject Complaint, Plaintiff did not serve a Notice of Intent to Defendants, which must include (a) a list of all known health care providers seen by Plaintiff for the injuries complained of subsequent to the alleged act of negligence, (b) all known health care providers during the 2-year period prior to the alleged act of negligence who treated or evaluated the claimant,

(c) copies of all of the medical records relied upon by the expert in signing the affidavit, (d) an expert affidavit, and (e) the executed authorization form provided in 766.1065 Florida Statutes.

44.    Plaintiff's claim was not submitted for the investigatory Pre-suit screening period; and the allegations in the Complaint were not reviewed by an expert witness. There is no dispute that a corroborating expert opinion was not supplied in the present case, as Plaintiff did not proffer or attach any expert testimony or corroborating affidavit with the Complaint.

45.    Florida law is clear that a medical negligence claim must go through a thorough investigation prior to the commencement of a civil action, therefore, the instant action cannot proceed. See Hosp. Corp. of Am. v. Lindberg, 571 So.2d 446, 449 (Fla. 1990).

46.    Thus, because Plaintiff did not comply with the mandatory pre-suit investigation as required by Fla. Stat. §766.106(2)-(3)(a) prior to commencing this action, his case must be dismissed. See R.W. v. Armor Correctional Health Services, Inc., 830 F.Supp.2d 1295, 1303 (U.S.D.C., M.D. Florida, 2011) (Plaintiff was bound under Chapter 766 to meet the pre-suit requirements for her claims sounding in medical malpractice);

47.     WHEREFORE, Defendants, James R. Ryan, M.D., and Thomas Winters, M.D., respectfully request that this Honorable Court dismiss Counts III and IV of Plaintiff's Amended Complaint with prejudice.

### Local Rule 3.01(g)(2) Certification

The undersigned counsel certifies that we have attempted to confer with the pro-se Plaintiff regarding the relief requested in this motion by sending a letter via Certified U.S. Mail in compliance with Local Rule 3.01(g)(1). The parties were unable to reach an agreement as to this Motion prior to the time of filing.

### Local Rule 3.01(g)(3) – Supplemental Certification re Unavailability

The undersigned certifies that the incarcerated Plaintiff was unavailable for conferral prior to the motion being filed. Subsequent to filing, pursuant to Local Rule 3.01(g)(3), the undersigned attempted to confer with the Plaintiff by locating his current whereabouts on the Florida Department of Corrections website, under "Offender Search." The search revealed that Plaintiff is currently incarcerated at the NorthWest Florida Reception Center Annex, 4455 Sam Mitchell Drive, Chipley, FL 32428-3597.

The undersigned telephoned the NorthWest Florida Reception Center Annex to inquire if we could hand deliver correspondence and a copy of the

instant motion. The Warden's Assistant informed the undersigned that the facility does not accept personal deliveries on behalf of incarcerated persons. The Warden's Assistant and Mailroom personnel informed the undersigned that the facility only accepts mail via the U.S. Postal Service. On July 22, 2025, the undersigned timely served the instant motion via certified priority mail through the U.S. Postal Service. Additionally, the undersigned attempted to serve Plaintiff via Fedex overnight mail. However, on July 23, 2025 at 8:25 a.m., the facility refused to accept the Fedex envelope on behalf of the Plaintiff. Fedex promptly notified the undersigned that they were unable to complete delivery as the facility refused to accept it, and informed the Fedex personnel that all documents must be received via the U.S. Postal Service. See Exh. A, Fedex tracking information.

The undersigned counsel certifies that we have attempted to confer with the pro-se Plaintiff regarding the relief requested in this motion by sending a letter via Certified U.S. Mail in compliance with Local Rule 3.01(g)(1), and by attempting conferral via Fedex delivery. The parties were unable to reach an agreement as to this Motion prior to the time of filing, and three days subsequent to the filing of the Motion.

Dated: July 25, 2025

CASE NO. 3:24-cv-796-MMH-PDB

Respectfully submitted,

*/s/ Kevin Mercer*
Kevin G. Mercer, Esquire (0012467)
KMercer@wickersmith.com
Elaine Blanchard, Esquire (12923)
eblanchard@wickersmith.com
WICKER SMITH O'HARA MCCOY &
FORD, P.A.
50 N. Laura St., Suite 2700
Jacksonville, FL   32202
Phone: (904) 355-0225
Fax: (904) 355-0226
JAXcrtpleadings@wickersmith.com
Attorney for Thomas Winters, M.D. and
James R. Ryan, M.D.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system on July 25,  2025, and the foregoing document is being served this day on all counsel or parties of record on the Service List below, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

*/s/ Kevin G. Mercer*
Kevin G. Mercer, Esquire

## SERVICE LIST

Horace B. Cummings
DC#  303027
Northwest Florida Reception Center Annex
4455 Sam Mitchell Drive
Chipley, FL 32428

Exhibit A

                                                                                ☰

FedEx® Tracking                                                                                    ⋮

**DELIVERY DETAILS**

# Pending
# pickup

Package available for pickup at: 8110 COMMERCE BLVD

**DELIVERY STATUS**
Ready for pickup  

**TRACKING ID**
802239023766  ✏️ ☆

**FROM**

**WE HAVE YOUR PACKAGE**
JACKSONVILLE, FL
7/22/25 6:04 PM

**ON THE WAY**
PANAMA CITY, FL
7/23/25 8:25 AM

**OUT FOR DELIVERY**

**READY FOR PICKUP**
PANAMA CITY, FL
7/24/25 6:25 AM

**TO**
*Delivery Details*
Pending pickup

↓ View travel history

Shipment facts                                                                                     ⌄

  Shipment overview

**TRACKING NUMBER**   802239023766

**SHIP DATE** ⑦   7/22/25





 Services

 Package details

↑ Back to to

## Travel history ︿

**SORT BY DATE/TIME**

Ascending ⌄

**Time zone**

Local Scan Time ⌄

Tuesday, 7/22/25

- 6:04 PM
  **Picked up**
  JACKSONVILLE, FL

- 8:13 PM
  **Left FedEx origin facility**
  JACKSONVILLE, FL

- 10:10 PM
  **Arrived at FedEx hub**
  MEMPHIS, TN

Wednesday, 7/23/25

- 3:20 AM
  **Departed FedEx hub**
  MEMPHIS, TN

- 5:29 AM
  **At destination sort facility**
  TALLAHASSEE, FL

- 7:13 AM
  **At local FedEx facility**
  PANAMA CITY, FL

- 8:24 AM
  **Delivery exception**
  Incorrect address
  PANAMA CITY, FL

- 8:25 AM
  **Delivery exception**
  Delivery was refused by the recipient
  PANAMA CITY, FL




8:23 AM
**Ready for recipient pickup**
Package available for pickup at: 8110 COMMERCE BLVD
PANAMA CITY, FL

 Back to to

**OUR COMPANY**

About FedEx

Our Portfolio

Investor Relations

Careers

FedEx Blog

Corporate Responsibility

Newsroom

Contact Us

**MORE FROM FEDEX**

FedEx Compatible

FedEx Developer Portal

FedEx Logistics

ShopRunner

**LANGUAGE**

 United States

**FOLLOW FEDEX** 

© FedEx 1995-2025
