UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

HORACE B. CUMMINGS,

Plaintiff,

v.

Case No. 3:24-cv-796-JEP-PDB

KASEY M. PAYNTER, et al.,

Defendants.

---

# ORDER

## I. Status

Plaintiff, Horace B. Cummings, is proceeding on an Amended Complaint for violation of civil rights (Doc. 15) against five Defendants: (1) Kasey M. Paynter, LPN; (2) James R. Ryan, M.D.; (3) Thomas Winters, M.D.; (4) D.P. Turner, "Doctor: Physical Therapy"; and (5) Cindy G. Nelson, LPN.[1] He asserts all Defendants acted with deliberate indifference to his serious medical needs in violation of his rights under the Eighth Amendment to the United States Constitution and that Paynter retaliated against him in violation of his rights

[1] In the section of his Amended Complaint where Plaintiff lists the Defendants, he indicates he sues Turner in his individual capacity only but sues the other four Defendants in both their individual and official capacities. *See* Doc. 15 at 2–4. However, in the "relief requested" section, Plaintiff contends he seeks compensatory and punitive damages from all Defendants in their individual capacities. *Id.* at 13.

under the First Amendment. *See* Doc. 15 at 7–8. As relief, he requests monetary damages, injunctive relief, and costs. *Id.* at 13.

This matter is before the Court on Defendants Drs. Ryan and Winters's Motion to Dismiss (Doctors' Motion; Doc. 52), Defendants Nelson and Paynter's Motion to Dismiss (Nurses' Motion; Doc. 55), and Defendant Turner's Motion to Dismiss (Turner Motion; Doc. 56) (collectively Defendants' Motions). Plaintiff filed a response to each Motion (Response(s); Docs. 70, 71, 77). Thus, Defendants' Motions are ripe for review.

## II. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept as true the factual allegations set forth in the complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002); *see also Lotierzo v. Woman's World Med. Ctr., Inc.*, 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. *See Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff still must meet some minimal pleading requirements. *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262–63 (11th Cir. 2004). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege

"enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555 (internal quotations omitted); *see also Jackson*, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (quotations, citation, and original alteration omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." *Iqbal*, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

### III. Plaintiff's Allegations[2]

Plaintiff states he injured his knee playing basketball on January 12, 2023. Doc. 15 at 6. A doctor who is not a party in this action ordered an x-ray of Plaintiff's knee, gave him a wheelchair, and prescribed him medication for the pain. *Id.* According to Plaintiff, he was transferred to Reception and Medical Center (RMC) on January 30, 2023, for an appointment with Drs. Ryan and Winters. *Id.* Plaintiff asserts he received an MRI and was diagnosed with a tear to the right patellar tendon in his knee. *Id.* at 7. He states Drs. Ryan and Winters recommended a surgical repair, which they conducted on April 28, 2023. *Id.* According to Plaintiff, Drs. Ryan and Winters performed the surgery in a "mobile trailer hospital unit" owned by Dr. Winters despite both doctors knowing the unit was infected with mold and unsafe for surgery. *Id.*

Paynter was to provide Plaintiff wound care from May 1, 2023 to May 10, 2023, during which time Plaintiff states he complained to Paynter that his knee was "infected, hot, swollen, leaking puss, and in severe pain causing a limp" but that Paynter would not document or report the symptoms despite

---

[2] In considering Defendants' Motions, the Court must accept as true all factual allegations in the Amended Complaint, consider the allegations in the light most favorable to Plaintiff, and accept all reasonable inferences that can be drawn from such allegations. *See Holland v. Carnival Corp.*, 50 F.4th 1088, 1093 (11th Cir. 2022). As such, the facts recited here are drawn from the Amended Complaint and may well differ from those that ultimately can be proved.

witnessing them during her care. *Id.* Plaintiff asserts he submitted grievances against Paynter for her refusal to provide care. *Id.*

Plaintiff states he received a follow up appointment with Drs. Ryan and Winters on May 12, 2023. *Id.* at 8. Plaintiff asserts he begged the doctors not to remove his stitches because his wound was still "visibly infected and had not closed," but that Drs. Ryan and Winters removed the stitches anyway and prescribed antibiotics as well as additional wound care. *Id.* Plaintiff states Paynter saw him for wound care only three times a week, leaving him with an infected wound in dirty bandages and uncleaned for several days at a time, but Paynter told him that "since he had written grievances and did not like her treatment, he could do his own wound care." *Id.* Plaintiff had a follow up visit with Drs. Ryan and Winters on May 19, 2023, at which time his wound allegedly had "gotten visibly worse and was hot, swollen, [and] leaking puss," and the pain was so severe, it caused him to limp, but the doctors refused to give any new treatment. *Id.* The doctors instead continued antibiotics and wound care, and later, on May 26, 2023, ordered an x-ray. *Id.*

Plaintiff states that Paynter took samples of the wounds from his knee on June 9, 2023, but refused any further treatment besides the same antibiotics "despite the fact that she had observed the infection getting worse over time" and heard continued complaints from Plaintiff regarding his symptoms. *Id.* Plaintiff asserts that the following day his knee "bursted" and

an officer called urgent care but was told that Paynter left orders that Plaintiff was not to be admitted to medical for any reason until his next scheduled call-out on June 12, 2023. *Id.*

According to Plaintiff, he had another appointment with Drs. Ryan and Winters on June 16, 2023, at which time they again ordered "daily wound care" and recommended a second surgery on Plaintiff's knee for irrigation and debridement. *Id.* at 9. At an appointment with the doctors, and in response to Plaintiff's complaints about Nurse Paynter not providing wound care every day, an unnamed Centurion nurse said she would email Paynter to make sure Plaintiff was being treated daily. *Id.* Plaintiff states he was then seen by Paynter daily between June 19 to July 13, 2023, but that she began acting curtly and told him not to go "over her head" again if he wanted his treatment to continue. *Id.*

Plaintiff received the second surgery on his knee on July 14, 2023, "in the same moldy mobile hospital unit." *Id.* Plaintiff states he was sent back to his dorm that night and that he had to borrow adult diapers from other inmates because his knee "started pouring out blood." *Id.* at 9–10. At approximately 12:05 a.m. on July 15, 2023, inmates alerted officers to Plaintiff's condition, and he was taken to urgent care and admitted to RMC Main Unit Hospital. *Id.* at 10. Plaintiff states he saw Dr. Kayode Balogon, who removed his bandages, "stated that [Plaintiff] should not have been allowed to leave the surgery room

in this condition," and ordered an IV antibiotic. *Id.* According to Plaintiff, he remained in the hospital for twenty-four days until August 8, 2023, and was on the IV for the first twenty. *Id.* Plaintiff asserts Drs. Ryan and Winters saw him for a follow up appointment on July 28, 2023, at which time they did not order any treatment, but set another follow up appointment in three weeks, which Plaintiff never received. *Id.*

Plaintiff states that on August 24, 2023, he was seen by "D.P. Turner (MD physical therapy)," who "refused to treat" Plaintiff's infection despite obvious symptoms and who recommended physical therapy only twice a week for eight weeks. *Id.* On September 11, 2023, Plaintiff "went to sick call to renew his temporary wheelchair pass" and saw Cindy G. Nelson, a sick-call nurse, "because his knee was infected." *Id.* at 11. Despite his complaints about his knee being infected, which caused pain, lack of movement, and an inability to support his weight, Nelson "refused treatment for it, stating that she was going off Doctor Turner's notes from August 24, 2023, [indicating] that [Plaintiff] doesn't need a wheelchair, and that his knee is not infected." *Id.* Plaintiff states he received physical therapy from September through November with an infected knee, which caused pain. *Id.* Plaintiff asserts that Turner "refused" to report Plaintiff's symptoms to orthopedics despite Plaintiff's continued complaints. *Id.*

After Plaintiff finished physical therapy, he met with Dr. Winters, who noted an abnormality on a recent x-ray and ordered an MRI. *Id.* Plaintiff asserts he received the MRI on December 23, 2023, and that the technician, Mark Cooper, M.D., noted he could see the infection on the MRI and asked Plaintiff why he had not been on antibiotics. *Id.* According to Plaintiff, he did not see any orthopedic doctor until an appointment with Dr. Ryan on January 12, 2024, at which Dr. Ryan "refused to admit to any infection" but stated that "there is only a 2% chance that the surgeries he and Dr. Thomas Winters do 'go wrong,' and that [Plaintiff] was in that 2%." *Id.* at 11–12. Plaintiff states Dr. Ryan did not treat the infection, but instead recommended a third surgery.

Plaintiff states his family advocated for a second opinion, so he was evaluated at Wakulla Correctional Institution where providers drained cysts forming on his knee and prescribed antibiotics, pain medication, and wound care. *Id.* at 12. According to Plaintiff, the mobile medical trailer where he had his first two surgeries was closed from January 2024 to April 2024 to remove the mold. *Id.*

## IV. Analysis

In the Doctors' Motion and the Turner Motion, Defendants argue the case must be dismissed because Plaintiff has failed to state a claim of deliberate indifference and makes only a state-tort claim of medical malpractice that fails to comply with mandatory pre-suit requirements under

section 766.106, Florida Statutes. *See generally* Docs. 52, 56. In the Nurses' Motion, Nelson and Paynter argue Plaintiff's Amended Complaint is subject to dismissal for his failure to state a claim and for his failure to exhaust his administrative remedies, and separately that he is not entitled to injunctive relief or punitive damages. *See generally* Doc. 55.

In his Responses to the Doctors' Motion and the Turner Motion, Plaintiff explicitly states he is pursuing only a claim of deliberate indifference, not any state law claim. *See* Doc. 70 at 2; Doc. 71 at 3–4. As such, their Motions will be denied as moot as to this argument.

As to the exhaustion arguments raised in the Nurses' Motion and the Turner Motion, the Court notes that prisoners are not required to "specially plead or demonstrate exhaustion in their complaints." *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized that "failure to exhaust is an affirmative defense under the PLRA[.]" *Id.* Because failure to exhaust administrative remedies is an affirmative defense, the defendant bears "the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Turner*, 541 F.3d at 1082. Here, Turner's argument fails because it is based simply on Plaintiff's failure to plead exhaustion. Paynter and Nelson, on the other hand, have provided some evidence of Plaintiff's grievance records, but they acknowledge that they had not, at the time of filing their Motion, received the "entirety of Plaintiff's

grievance records" and would supplement the Motion upon receipt. Doc. 55 at 14 n.3. Paynter and Nelson failed to supplement the Motion, and the Court is left with incomplete grievance records. Accordingly, Paynter and Nelson have not met their burden of showing that Plaintiff failed to exhaust all available administrative remedies. The exhaustion arguments are, thus, denied without prejudice.

**A. Failure to State a Claim**

Before addressing the individual capacity claims, the Court first will address the Nurses' argument that any claims against them in their official capacities must be dismissed. Official capacity claims are treated as claims against the entity that employs the Defendants. *See Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991) (internal quotations and citations omitted); *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997) (noting when a private entity that "contracts with a county to provide medical services . . . performs a function traditionally within the exclusive prerogative of the state" it is treated the same as the government entity for § 1983 purposes); *Mcelwain v. Escambia Cnty.*, No. 3:23CV22026/MCR/ZCB, 2024 WL 2264409, at *2 (N.D. Fla. Jan. 24, 2024), *report and recommendation adopted*, No. 3:23CV22026/MCR/ZCB, 2024 WL 2261109 (N.D. Fla. May 17, 2024) ("Plaintiff's official capacity claims are treated as claims against the entity that employs the medical Defendants."). To establish liability under § 1983 against Defendants in their official

capacities, a plaintiff must show that an official policy or custom of the employing entity was the "moving force" behind the alleged constitutional deprivation. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 693–94 (1978).

Here, Plaintiff has not made any allegations regarding the entities that employ any named Defendant, nor has he alleged that any such entity has a policy or custom which was the moving force behind the alleged constitutional deprivations. Thus, the official capacity claims against Nelson and Paynter shall be dismissed.[3]

**1. Deliberate Indifference**

The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). To establish an Eighth Amendment violation, a prisoner must satisfy both an objective and subjective inquiry regarding a prison official's conduct. *Swain v. Junior*, 961 F.3d 1276, 1285 (11th Cir. 2020) (citing *Farmer*,

[3] Although the other Defendants do not make any argument regarding the official capacity claims against them, any official capacity claim against them likely fails for the same reason.

511 U.S. at 834). As it relates to medical care, "the Supreme Court has held that prison officials violate the bar on cruel and unusual punishments when they display 'deliberate indifference to serious medical needs of prisoners.'" *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1265 (11th Cir. 2020) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Specifically, the Eleventh Circuit has instructed that to establish liability on an Eighth Amendment deliberate indifference claim, the plaintiff must show:

> First . . . as a threshold matter, that he suffered a deprivation that was, "objectively, 'sufficiently serious.'" [*Farmer*, 511 U.S. at 834].
>
> Second, . . . that the defendant acted with "subjective recklessness as used in the criminal law," *id.* at 839, and to do so he must show that the defendant was actually, subjectively aware that h[er] own conduct caused a substantial risk of serious harm to the plaintiff—with the caveat, again, that even if the defendant "actually knew of a substantial risk to inmate health or safety," [s]he "cannot be found liable under the Cruel and Unusual Punishments Clause" if [s]he "responded reasonably to the risk." *Id.* at 844–45.

*Wade v. McDade*, 106 F.4th 1251, 1261 (11th Cir. 2024) (enumeration and emphasis omitted);[4] *see Stalley v. Cumbie*, 124 F.4th 1273, 1283 (11th Cir.

[4] For decades, the Eleventh Circuit has described a "more than *mere* negligence" or "more than *gross* negligence" standard in determining whether an official acted with deliberate indifference to an inmate's serious medical need. *Wade*, 106 F.4th at 1255. In *Wade*, the Eleventh Circuit determined that those standards conflicted with the Supreme Court's decision in *Farmer* and clarified that courts in this circuit should apply the "subjective recklessness" standard "as used in the

2024) (recognizing that to prevail on a deliberate indifference claim, a plaintiff must show that he suffered "an objectively serious medical need," and that the defendant acted with deliberate indifference to that need, meaning that the defendant "(1) had subjective knowledge of a risk of serious harm, (2) disregarded that risk, and (3) engaged in conduct that amounts to subjective recklessness" (internal quotations and citations omitted)).

"As applied in the prison context, the deliberate-indifference standard sets an appropriately high bar." *Swain*, 961 F.3d at 1285. Importantly, medical treatment gives rise to a constitutional violation "only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1271 (11th Cir. 2020) (quotations omitted). Indeed, the law is well settled that the Constitution is not implicated by the negligent acts of corrections officials and medical personnel. *Daniels v. Williams*, 474 U.S. 327, 330–31 (1986); *Davidson v. Cannon*, 474 U.S. 344, 348 (1986) ("As we held in *Daniels*, the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials."). Indeed, the Eleventh Circuit recently emphasized that the subjective

---

criminal law." *Id.* at 1253. The Court notes that Judge Jordan wrote a concurring opinion in *Wade*, opining that to the extent prior Eleventh Circuit deliberate indifference cases are not inconsistent with *Wade*, "they should continue to be cited as binding precedent." *Id.* at 1265 (Jordan, J., concurring).

recklessness standard requires a plaintiff to show a prison official had "more than a generalized or abstract knowledge" of a risk. *See McClinton v. Warden, Baldwin State Prison*, 172 F.4th 1276, 1283 (11th Cir. 2026). "Put simply, a constitutional violation occurs only when prison officials act 'consciously' such that their acts or omissions knowingly have the effect of inflicting a punishment." *Id.*

Thus, a complaint that a medical provider has been negligent "in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011) (quotations and citation omitted). "Accidents, mistakes, negligence, and medical malpractice are not 'constitutional violation[s] merely because the victim is a prisoner.'" *Harris v. Coweta Cnty.*, 21 F.3d 388, 393 (11th Cir. 1994) (quoting *Estelle*, 429 U.S. at 105). Additionally, when a prisoner receives medical care "and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Hoffer*, 973 F.3d at 1272. For instance, "whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (quoting

*Estelle*, 429 U.S. at 107). Similarly, "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [fails to] support a claim of cruel and unusual punishment." *Hoffer*, 973 F.3d at 1273 (alteration in original) (quoting *Harris*, 941 F.2d at 1505). The Eleventh Circuit has also noted that "[n]othing in our case law would derive a constitutional deprivation from a prison physician's failure to subordinate his own professional judgment to that of another doctor; to the contrary, it is well established that 'a simple difference in medical opinion' does not constitute deliberate indifference." *Bismark v. Fisher*, 213 F. App'x 892, 897 (11th Cir. 2007)[5] (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

*a. Nelson and Paynter*

Plaintiff alleges that Nelson and Paynter "knew the serious risks to [his] knee but refused proper treatment." Doc. 15 at 13, 14. Nelson and Paynter argue that Plaintiff's allegations do not show the nurses did not care for him, but rather that he believes the medical care was "insufficient or ineffective." Doc. 55 at 7. Nelson and Paynter assert that even accepting Plaintiff's

[5] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. *See McNamara v. Gov't Emps. Ins. Co.*, 30 F.4th 1055, 1060–61 (11th Cir. 2022); *see generally* Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

allegations as true, "they call into question these Defendants' medical judgment, which is not actionable in a claim for violations of the Eighth Amendment." *Id.* In his Response, Plaintiff argues that they both "ignored [] the fact that his knee was infected," which he alleges is sufficient to demonstrate "evil" intent. Doc. 77 at 6–7.

Plaintiff's claim against Nelson stems from a single sick-call encounter he had after his second surgery, during which he attempted to renew his wheelchair pass. Doc. 15 at 11. Plaintiff alleges that although he complained of continued issues with his knee, Nelson "refused treatment," relying on Turner's notes from August 24, 2023, to determine Plaintiff should progress to a cane instead of remaining wheelchair bound. *Id.* Accepting as true that Nelson saw Plaintiff in sick-call on one day regarding an injury other medical providers had been treating for months, and Nelson deferred to Plaintiff's primary medical providers' judgment whether he required a wheelchair pass, nothing in Plaintiff's factual allegations would permit a reasonable inference that Nelson was subjectively aware of a risk of serious harm and deliberately indifferent to it. These allegations, at most, allege negligence or a "simple difference in medical opinion between the prison's medical staff and [Plaintiff] as to the latter's diagnosis or course of treatment," neither of which supports an Eighth Amendment claim. *See Hoffer*, 973 F.3d at 1273; *see also McCrimmon v. Centurion of Fla., LLC*, No. 3:20-CV-36-BJD-JRK, 2021 WL

424348, at *5 (M.D. Fla. Feb. 8, 2021) (concluding that a nurse's failure to intervene in the potentially substandard care of a prisoner, based solely on unspecified "encounter[s]" with that prisoner in the prison infirmary, amounts to negligence, not deliberate indifference). Accordingly, the deliberate indifference claim against Nelson is dismissed.

Plaintiff alleges Paynter was the primary nurse responsible for his wound care following his first knee surgery.[6] *See* Doc. 15 at 7–9. Despite Plaintiff's allegations that Paynter told Plaintiff he could do his own wound care since he filed grievances complaining about her care, Plaintiff's allegations demonstrate that Paynter indeed provided wound care on a continuous basis. *See id.* For instance, he alleges that during the periods of time the doctors ordered wound care for him, Paynter provided care multiple days a week at first, and subsequently on a daily basis. *Id.* at 8, 9. His allegations also demonstrate that when he did not improve, she took samples from his knee for testing. *Id.* at 8. Plaintiff's assertion that she did not do more (i.e., provide wound care every single day or prescribe a different antibiotic)

[6] Plaintiff makes no allegations in his Amended Complaint to suggest Paynter was tasked with any of his medical care following his second surgery. While Plaintiff makes assertions regarding Paynter's care of him after his third surgery on August 23, 2024, that care took place after the initiation of this case and the filing of the Amended Complaint and is, thus, irrelevant to the claims raised herein. Moreover, as stated above, Plaintiff may not amend his complaint through his Response. *See Huls v. Llabona*, 437 F. App'x 830, 832 n.5 (11th Cir. 2011) (citing *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)). Thus, such allegations will not be considered.

constitutes a mere disagreement with her treatment, not a constitutional violation.

To the extent Plaintiff bases his claim against Paynter on the allegation that she instructed other prison medical providers not to see him in medical over the weekend between June 9-12, 2023, the Court similarly concludes that Plaintiff fails to state a claim. The documents provided by Plaintiff demonstrate that Paynter provided wound care on June 9, 2023, and was scheduled to see Plaintiff again on Monday, June 12, 2023. *See* Doc. 77-1 at 25.

There is no indication in the medical notes that Paynter was concerned on Friday that Plaintiff's cyst would burst over the weekend, and Paynter informed Plaintiff that "if any issues [were to occur over the weekend, he should] report to wound care or urgent care." *Id.* Thus, even assuming Paynter told other medical providers not to see Plaintiff before his appointment on Monday, June 12, 2023, Plaintiff does not allege that Paynter was subjectively aware of a serious medical need, because Plaintiff's cyst did not burst until after Paynter left for the weekend. In other words, Paynter did not tell other providers to refuse Plaintiff treatment knowing that he would require treatment between Friday and Monday. Rather, Plaintiff's allegations suggest, at most, that Paynter did not want anyone interfering with her plan of care at a time when she believed Plaintiff was stable and knew she would be seeing him upon her return to work. Moreover, to the extent other medical providers

knew Plaintiff needed treatment over the weekend—when Paynter was not on duty—their failure to provide care for a serious medical need cannot be attributed to Paynter under the deliberate indifference standard. Accordingly, the Nurses' Motion is due to be granted to the extent that Plaintiff has failed to state a claim of deliberate indifference against Nelson and Paynter.

*b. Turner*

Plaintiff's allegations regarding Turner are vague. He avers that Turner "knew of the serious risks to [his] knee, but refused proper treatment." Doc. 15 at 14. However, the factual allegations supporting his claim suggest only that Turner provided physical therapy from late August to November, and that while Plaintiff complained to Turner about his symptoms, Turner "refused to report the symptoms to orthopedics, or even modify his previous notes." *Id.* at 10–11. Treatment of any infection was outside the scope of the physical therapist's duties, and a mere refusal to report symptoms does not amount to deliberate indifference. Plaintiff's allegations are insufficient to suggest that Turner was subjectively aware that his inaction in reporting Plaintiff's symptoms caused a substantial risk of serious harm to Plaintiff. In his Response to the Turner Motion, Plaintiff argues that Turner "knew [Plaintiff's] knee was infected and ignored [his] pain" and "deliberately did not send Plaintiff to urgent care or the orthopedic doctor in an effort to save the company money." Doc. 70 at 3–4. However, these allegations are not included in the

Amended Complaint and will not be considered. *See Huls*, 437 F. App'x at 832 n.5. Thus, Turner's Motion to Dismiss is due to be granted for Plaintiff's failure to state a claim against him.

*c. Ryan and Winters*

In the Doctors' Motion, they argue "Plaintiff's claims are grounded on his interpretation of what constitutes a reasonable standard of care for treatment of an infected knee" and that his own allegations demonstrate the doctors "ordered antibiotics, daily wound care treatment, and performed multiple surgeries, irrigation and debridement." Doc. 52 at 6–9.

Though the Court acknowledges that some of Plaintiff's allegations may suggest mere disagreement with the doctors' course of treatment, Defendants' argument ignores other allegations by Plaintiff. For instance, Plaintiff asserts that the doctors acted with deliberate indifference by knowingly conducting his surgeries in a mobile hospital unit that the doctors knew contained visible mold, rather than moving Plaintiff to a "safe environment" for the surgery, and by ignoring the infection on several occasions. Doc. 15 at 7, 9, 10, 11–12. Plaintiff also asserts that Drs. Ryan and Winters sent him back to his dorm from his second surgery in a visibly dangerous state. *Id.* at 9–10. Accepting Plaintiff's allegations as true, the Court concludes that Plaintiff's allegations are sufficient to proceed at this stage. Thus, Plaintiff's deliberate indifference claim against Drs. Ryan and Winters will proceed only as to the doctors' alleged

decision to perform two of Plaintiff's knee surgeries in conditions that involved a serious risk of harm.[7]

### 2. Retaliation

In the Nurses' Motion, Paynter argues Plaintiff fails to state a claim for retaliation because there is no allegation that Paynter was aware of any grievances. Doc. 55 at 11. "The core of [a retaliation claim brought pursuant to 42 U.S.C. § 1983] is that the prisoner is being retaliated against for exercising his right to free speech." *O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011) (per curiam) (citation omitted). It is firmly established that "an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement." *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008). And it is firmly established that an inmate may pursue a cause of action against a prison official who retaliated against him for engaging in that protected speech. *Id.* Three elements are involved in these retaliation claims:

> 1) [the inmate's] speech was constitutionally protected; 2) the inmate suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and 3) there is a causal

[7] In his Response to the Doctors' Motion, Plaintiff asserts that Drs. Winters and Ryan "deliberately delayed Plaintiff's medical treatment for Plaintiff's infected knee solely because they did not want to pay [for] Plaintiff's emergency hospital and treatment." Doc. 71 at 1. This allegation is not contained in his Amended Complaint and, thus, will not be considered.

> relationship between the retaliatory action and the protected speech.

*Smith*, 532 F.3d at 1276. To establish the third prong, a plaintiff must do more than make "general attacks" upon a defendant's motivations and must articulate "affirmative evidence" of retaliation to prove the requisite motive. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998) (citations omitted). "In other words, the prisoner must show that, as a subjective matter, a motivation for the defendant's adverse action was the prisoner's grievance or lawsuit." *Jemison v. Wise*, 386 F. App'x 961, 965 (11th Cir. 2010) (per curiam) (citation omitted) (concluding the district court erred by dismissing with prejudice a complaint alleging retaliation, "regardless of whether the retaliation claim ultimately [would] ha[ve] merit").

Here, Plaintiff alleges that he filed grievances against Paynter in May, and that she specifically acknowledged his grievances, stating that "since he had written grievances and did not like her treatment, he could do his own wound care." Doc. 15 at 7, 8. He further states he informed the doctors that she was not providing wound care daily, and that after a nurse reached out to her, she then threatened Plaintiff he should not go "over her head" again if he wanted his treatment to continue. *Id.* at 9. Contrary to Defendants' arguments, Plaintiff's allegations indeed convey that Paynter was aware of Plaintiff's grievances against her and that she, consequently, threatened to stop his care.

These allegations, accepted as true, state a causal relationship between the alleged adverse action (Paytner's threats) and the protected speech (grievances). Defendants make no argument as to whether the threats were "likely [to] deter a person of ordinary firmness from engaging in such speech." Accordingly, the Nurses' Motion will be denied on this basis.

### B. Punitive Damages and Injunctive Relief

In the Nurses' Motion, they argue that Plaintiff is not entitled to punitive damages or injunctive relief. Doc. 55 at 14–16.[8] As to the former, they argue Plaintiff does not allege "Defendants' conduct was motivated by evil motive or intent or involved reckless or callous indifference to [his] federally protected rights." *Id.* at 14. As to the latter, they argue his request for injunctive relief in the form of proper medical treatment must be dismissed because he fails to state a plausible deliberate indifference claim against them. *Id.* at 15.

Because the Court has concluded that Plaintiff fails to state a plausible deliberate indifference claim against the Nurses, his request for injunctive relief from them (treatment of his infected knee) will be dismissed. However, his claim for punitive damages from Nurse Paynter will not be dismissed at this juncture. "'[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by

[8] The Court notes that because the sole claim for relief against Nelson is subject to dismissal as determined above, this argument is moot as to that Defendant.

evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Lambert v. Fulton County, Ga.,* 253 F.3d 588, 598 (11th Cir. 2001) (quoting *Smith v. Wade,* 461 U.S. 30, 56 (1983)). Plaintiff's retaliation claim against Paynter includes allegations upon which a jury could infer evil intent or motivation.

**C. Request for Settlement**

Also before the Court is Plaintiff's request for a settlement conference (Doc. 78). Defendants Turner, Paynter, and Nelson filed responses in opposition (Docs. 79, 80). Because Plaintiff's remaining claims warrant factual development through discovery, the Court will deny this request without prejudice. The Court later may reconsider the request sua sponte.

Accordingly, it is

**ORDERED:**

1. Defendants Ryan and Winters's Motion to Dismiss Counts III and IV of Plaintiff's Amended Complaint (Doc. 52) is **DENIED**.

2. Defendants Nelson and Paynter's Motion to Dismiss Counts I, II, and VI of Plaintiff's Amended Complaint (Doc. 55) is **GRANTED in part** as follows: Plaintiff's deliberate indifference claims against Defendants Nelson and Paynter are dismissed for his failure to state a claim; and Plaintiff's request for injunctive relief from these Defendants is dismissed. The Motion is **DENIED without prejudice** as to the exhaustion argument and **DENIED**

as to the request that Plaintiff's request for punitive damages against Defendant Paynter be dismissed.

3. Defendant Turner's Motion to Dismiss Count V of Plaintiff's Amended Complaint (Doc. 56) is **GRANTED** to the extent that Plaintiff has failed to state a deliberate indifference claim against Defendant Turner. The Motion is **DENIED as moot** with respect to dismissal of the purported state law medical malpractice claim.

4. The **Clerk** shall terminate Cindy Nelson and D.P. Turner as Defendants in this matter.

5. Defendants Ryan, Winters, and Paynter must answer the Amended Complaint (Doc. 15) within **twenty days** of the date of this Order.

6. Plaintiff's request for settlement conference (Doc. 78) is **DENIED without prejudice**.

**DONE AND ORDERED** at Jacksonville, Florida, on July 31, 2026.

JORDAN E. PRATT
UNITED STATES DISTRICT JUDGE

JaxP-12/Jax-6
c: Horace B. Cummings
Counsel of Record